### SOUTHWEST BATTERY CORPORATION v. OWEN et al.

No. 4987.

Court of Civil Appeals of Texas. Texarkana.

July 3, 1936.

Rehearing Denied Sept. 10, 1936.

Lasseter, Simpson & ·Spruiell, of Tyler, for plaintiff in error.

Ramey, Calhoun & Marsh, of Tyler, for defendants in error.

SELLERS, Justice.

Southwest Battery Corporation brought this suit in the special district court of Smith county against C. E. Owen and R. B. Cullem, composing the partnership of East Texas Distributing Company. The suit is upon a verified account to recover an indebtedness of $1,251.57. Defendants in a cross-action seek to recover of plaintiff the sum of $1,500 as lost profits alleged to be caused by plaintiff's breach of a certain contract which plaintiff had with defendants. We quote from defendants' pleadings as follows:

"Defendants show to the court that on or about the ───── day of June, A. D. 1932, they entered into a verbal contract with plaintiff, acting by and through its agents, W. P. Ryan and R. S. Smith, being the contract by virtue of which plaintiff delivered to defendants the merchandise for which plaintiff now sues defendants in the suit to recover the price thereof, whereby it was agreed that defendants would establish and conduct a business to be known as East Texas Distributing Company, located in Tyler, Smith County, Texas, and plaintiff agreed to manufacture batteries which were to be consigned to defendants and by defendants to be re-consigned or sold to retail dealers within the State of Texas; that the purpose of said agreement and the establishment of said business in Texas was for the mutual benefit and profit of defendants and plaintiff; that plaintiff, by said agents aforesaid, represented to defendants that it was able to manufacture and produce such batteries and in such quantities as defendant might require or demand of it, and further represented that its factory facilities for the manufacture of batteries was far beyond any present or likely demand, and that it was fully capable of supplying any and all batteries that might be demanded or required by defendants; that said batteries were to be delivered to defendants and the difference between the price for which the batteries were to be sold or consigned to retail dealers in Texas and the manufacturer's price was to be the amount to be retained by defendants as their gross profit; that under said agreement aforesaid, defendants were to begin business by June 15th, 1932, and plaintiff was to furnish all batteries required by said date.

"That said agreement aforesaid was entered into by defendants acting upon the representations made by plaintiff as to its ability to manufacture and supply defendants with sufficient batteries to justify defendants in· establishing a business for the purpose of distributing the batteries for plaintiff within the State of Texas, and plaintiff, at the time that said contract was made and entered into, knew that it would be necessary for defendants to rent a building, procure a motor truck, and otherwise equip said business for the purpose of distributing said batteries, and knew that said building and equipment would require expenditure of defendants; that plaintiff well knew that the purpose of defendants in entering into said contract was to make profits constituting the difference between the price as set out aforesaid, and that said contract was to be mutually profitable to plaintiff and defendants, and same would have been highly so if plaintiff had carried out its contract as it had agreed so to do. * * *

"* * * That on or about July 1st, 1932, for the first time, plaintiff supplied defendants with a few batteries, only of such sufficient quantity as to enable defendants to advertise and use same as samples, and beginning on or about July 15th, 1932, when defendants began to secure a great number of orders for said batteries, and could have secured other orders, plaintiff breached its contract with defendants, as aforesaid, and failed and refused to carry out its contract, aforesaid, to furnish batteries in sufficient quantity as were required by defendants, and by virtue of such failure and refusal to furnish said batteries, defendants were unable to fill orders during the period from July 15th, 1932, until January 15th, 1933, and if said batteries had been furnished to defendants during said period in· sufficient quantity to fill the orders which defendants had secured and which defendants could have secured if

they had had sufficient batteries, defendants could have sold fifteen hundred batteries in addition to those which were sold and thus increased their gross profits in the sum of $1,500. * * * That by virtue of the breach of its contract, as aforesaid, by plaintiff, these defendants were deprived of conducting a profitable business and were finally compelled to terminate said business after seeing that on account of the failure of plaintiff to furnish sufficient batteries in sufficient quantity for sale or reconsignment; that plaintiff knew at the time it was failing to furnish said batteries that defendants would suffer said losses; that as a direct result of the breach of its contract by plaintiff, defendants lost the profits amounting to $1,500.00, which they could reasonably have made if said batteries had been furnished in sufficient quantities.

"Defendants show to the Court that the damages which they have suffered by reason of the breach of the contract aforesaid by plaintiff if unpaid and due and exceeds the damages alleged to have been sustained by plaintiff by reason of the matters set out in its petition:

"Wherefore, these defendants pray that plaintiff be cited in the time and manner required by law, and that upon final hearing hereof defendants have judgment against plaintiff for the sum of $1,500.00, or, in the alternative, that they have judgment against plaintiff for the difference between said amount and any judgment that plaintiff might recover against these defendants, and for costs of suit, and for such other and further relief, special and general, in law and in equity, to which they may be entitled."

The correctness of plaintiff's account not being contradicted, the court submitted to the jury the following issues with respect to defendants' cross-action:

"Question No. 1. Do you find from a preponderance of the evidence in the contract and agreement between plaintiff and defendants for the handling of batteries by the defendants for the plaintiff, that plaintiff agreed and represented that it was able to promptly fill and deliver all orders for batteries needed by defendant in handling the same? Answer Yes or No."

Answer: "Yes."

"If you have answered question No. 1 'Yes,' and in that event only, then answer question No. 2.

"Question No. 2. Did the defendants rely on such agreement and representation, if any such you have found in answer to question No. 1, in entering into the agreement to handle the batteries for the plaintiff? Answer Yes or No."

Answer: "Yes."

"If you have answered questions numbers one and two 'Yes' and in that event only, then answer question No. 3.

"Question No. 3. Do you find from a preponderance of the evidence that the plaintiff, at any time or times, while the defendants were handling batteries for the plaintiff, failed to deliver the kind of batteries ordered by defendants with reasonable promptness after the same were ordered? Answer Yes or No."

Answer: "Yes."

"If you have answered question No. 3 and have answered it 'Yes,' and in that event only, then answer question No. 4.

"Question No. 4. Do you find from a preponderance of the evidence that the defendants were caused to lose any profits in their business of handling the batteries of plaintiff, as a result of such failure, if any, of the plaintiff to make deliveries to them of batteries, with reasonable promptness after the same were ordered?

"In connection with question No. 4, you are instructed that 'profits,' as used in said question, means net profits, that is, the amount of money, if any, defendants would have reasonably made over and above their expenses of operation in handling said batteries, from the sale thereof, during the time they were handling batteries for the plaintiff. You will answer question No. 4 Yes or No."

Answer: "Yes."

"If you have answered Question No. 4, and have answered it 'Yes' and in that event only, then answer question No. 5.

"Question No. 5. What amount of profits, as that term is defined above, if any, do you find from a preponderance of the evidence defendants were caused to lose during the time they were operating under the agreement with plaintiff to handle batteries, by reason of plaintff's failure, if any, to make deliveries of batteries with reasonable promptness after ordered by them? Answer in dollars or dollars and cents, if any, as you may find."

Answer: "$1,145.50."

The court entered judgment for plaintiff for the difference between the amount of plaintiff's account and the amount of profits the jury found the defendants lost by virtue of the breach by plaintiff of its contract with defendants, which was the sum of $91.69. From this judgment plaintiff has appealed by writ of error to this court.

The plaintiff in error contends on this appeal that the pleadings and evidence are insufficient to support the recovery of lost profits by defendants, in error. The pleadings of defendants in error as above set out, in our opinion, are sufficient to support the jury's verdict and the judgment of the court entered thereon.

With respect to the sufficiency of the evidence the plaintiff in error cites the rule announced in 13 T.J. 216:

"New or Unestablished Enterprise—Reasoning that the profits which might have been derived from the plaintiff's business are not susceptible of being proved to the degree of certainty which the law demands, the courts have held that no recovery may be had where it appears that the enterprise was not yet established at the time of the defendant's breach of contract. In such circumstances, it is said that there is no basis for estimating the profits that would have been earned, and that it is not certain that any profits would have been made.

"The uncertainty does not depend upon the difficulty of proof as to the exact amount of damages in such cases, but upon the determination of the fact as to whether or not there would have been any profits at all."

In view of this recognized rule, it is contended by plaintiff in error that defendant in error's business at the time of the breach of the contract was a new and unestablished enterprise, therefore the evidence offered by defendants in error is insufficient to form the basis of a recovery for lost profits by them. We do not believe this contention can be sustained. While the evidence warrants the contention that defendants in error's business was new, we do not believe it can be said that it was such an unestablished enterprise at the time the contract was breached as to render the evidence offered with respect to lost profits to be of that uncertain and speculative character as to render it wholly incompetent to support the finding by the jury that there would have been a profit made by defendants in error had the contract not been breached. Of course, with respect to the amount of the lost profits, the rule recognizes that such is always established by evidence which is more or less speculative. The evidence shows that plaintiff in error induced defendants in error to enter into the business known as the East Texas Distributing Company and agreed with them to furnish batteries of various types in quantities such as they might need on consignment, the batteries to be reconsigned to such business houses throughout East Texas as defendants in error could induce to handle their line of batteries. The defendants in error rented a building in which to store a supply of the batteries, and purchased an automobile in which to make deliveries of batteries to the various business houses handling their products at regular intervals. The defendants in error were to receive a commission on the various batteries from $1 on what was known as the popular-priced battery upward on the higher-priced batteries. In compliance with their agreement the defendants in error secured about 45 business houses throughout their territory to handle plaintiff in error's line of batteries. It is shown from the evidence that defendants in error began their business about June 15, 1932, and continued it until January, 1933, when it was discontinued. It was further shown that from almost the beginning until the end the plaintiff in error failed to furnish the necessary amount of batteries to supply the trade established by defendants in error. Especially was this true with respect to the cheap or popular-priced batteries on which defendants in error made a commission of $1. The evidence is to the effect that defendants in error had numerous calls for this battery from those handling their batteries which they could not furnish because plaintiff in error failed to comply with their contract to furnish defendants in error batteries as it might need. The evidence is further to the effect that the various business houses had numerous calls for these batteries. The evidence further shows that because defendants in error were unable to furnish their trade with sufficient number of batteries they lost customers who sold from a few to as high as a hundred batteries per month, and that these customers continued to be lost, until they were forced to cease their business, all because the plaintiff in error failed to comply with its contract and furnish batteries in sufficient quanti-

ties to supply its established trade. These facts, together with the record as a whole, make this case very similar to the case of Grand Prairie Gravel Co. v. Joe B. Wills Co., 188 S.W. 680, decided by the Amarillo Court of Civil Appeals, where the evidence was held sufficient to support a recovery for lost profits, and the Supreme Court refused a writ of error in the case.

The judgment is affirmed.