### JOYCE v. ANDERSON–BLEDSOE STAVE CO. et al.

#### No. 6068.

Court of Civil Appeals of Texas. Texarkana.

July 24, 1943.

Rehearing Denied July 15, 1943.

F. B. Caudle, of Mt. Vernon, for appellant.

R. T. Wilkinson, of Mt. Vernon, and Cook & Russell, of Mt. Pleasant, for appellees.

HALL, Justice.

The following is the agreed statement of the case:

"This is a suit brought by Anderson-Bledsoe Stave Company, a partnership

composed of W. C. Anderson and C. O. Bledsoe, to recover on an alleged breach of a timber contract, dated 14th day of August 1940, entered into between F. J. Joyce and J. D. Stone, and assigned to Anderson and Bledsoe Stave Company by J. D. Stone, by instrument bearing same date, covering about 490 acres of land in Camp-Titus Counties, and timber to be removed within one year from date; plaintiffs further allege they intended to fell the timber, move it and make staves out of it; and allege that F. J. Joyce, defendant, breached the contract by entering into a timber contract with E. S. Stout, dated April 7, 1941, and alleged they have been deprived of 150 cords of timber that would make 67,500 4½ in. staves, or 450 staves per cord, which, when sold, would have brought on the market $45.00 per thousand, aggregating the sum of $2700.00, less the cost to plaintiff of cutting, hauling, loading, freight charges, manufacturing and selling, there would accrue to plaintiffs a net profit of $1181.25, and plaintiffs sued to recover such alleged profits and/or special damages in that amount; or in the alternative to recover the value of the standing timber of an alleged value of $501.00.

"Defendant presented six special exceptions to plaintiffs' amended petition, five of which exceptions went to that part, wherein plaintiffs were alleging and seeking to recover profits and/or special damages, because such was too speculative, too remote and uncertain, and not contemplated by the parties at the time the contract was entered into; defendant plead a general denial, and further plead that plaintiffs moved off the premises, abandoned the contract, and with the intention not to return."

This case was tried before the court without a jury. All appellant's special exceptions were overruled and judgment was entered for appellees for $465.67.

Appellant's first 4 points are directed to the action of the trial court in overruling his special exceptions leveled at appellees' pleadings. The grounds of said exceptions are: (1) The recovery sought is too speculative, remote and uncertain to form the basis of recovery of special damages; (2) sufficient facts are not set forth to put appellant upon notice as to the method of arriving at special damages and profits or the locality where the cash market value is to be established; and (3) that said contract does not provide, either expressly or impliedly, for damages, and no facts or circumstances are pleaded showing that loss of profits or special damages suffered are contemplated by the parties to the timber contract. After alleging the execution of the timber contract by appellant, Joyce, covering all oak and ash timber of certain dimensions standing on his 490 acres of land situated in Camp and Franklin Counties on the waters of Cypress Bayou, and Joyce's breach thereof by a sale of all timber on the same land on April 7, 1941, to E. S. Stout, appellees alleged that: "At the time the defendant sold and delivered the timber on the land to E. S. Stout, there was standing on the land timber of the kind sold to plaintiff consisting of about 150 cords, or about 100,000 feet and which plaintiff intended to manufacture into staves; and their intention to do so was known to the defendant at the time that they purchased same; in fact, it was the intention of J. D. Stone and of plaintiff at the time said timber was purchased to cut and manufacture the same into staves and which fact was known to the defendant at the time he sold the timber and the said defendant was apprised of the purpose for which plaintiff had bought the timber at all times."

Appellees' pleading also set out in detail the amount of oak stave timber (oak only is here involved) remaining on said land after the breach of their contract by Joyce; the expense necessary to convert same into finished staves at Texarkana, Texas, and the net profit which would have accrued to them from the sale of said staves. The timber contract between Joyce and Stone under which appellees held contained, among others, the following provisions:

"To have and to hold the said standing timber to the said J. D. Stone, his heirs and assigns, with whom the party of the first part covenants that he is seized in fee of the said timber; and has a good right to sell and convey the same, as herein done, and the title to same the said party will defend against the lawful claims of all persons whomsoever, and will indemnify and save harmless the said J. D. Stone, his heirs or assigns, from all loss, damage and expense, which he may sustain by reason of the failure of or controversy over the title hereby conveyed.

\*      \*      \*      \*      \*

"The party of the first part agrees to protect said J. D. Stone, and his assigns in the full and complete enjoyment of all

rights granted herein, and to keep the said land, on which the timber now stands, and the timber herein, free from all tax claims, damages or liens on part of the state or county, and also keep the title thereto in such condition as to keep the said J. D. Stone, and his assigns from being in any manner interfered with, until he or his assigns shall have reaped the full benefit of this contract in accordance with the terms and conditions, as hereinbefore set forth."

In our opinion, these allegations are sufficient to support a judgment for net profits or special damages arising from the breach of the timber contract by appellant. The allegations are sufficient to apprise appellant of the nature of the cause of action asserted by appellees. In Carrico v. Stevenson, Tex.Civ.App., 135 S.W. 260, 262, it is said: "We are of the opinion that the damages sought to be recovered as net profits arising from the sale of the cordwood and the ash and elm logs under the decisions of this court are not too remote, uncertain, and speculative, and that the trial court erred in sustaining special exception (e) to the eighth paragraph of the petition setting up this claim. By the terms of the contract appellant was to have all of the wood and timber cut on the land, which was much the most important part of the consideration to him. In paragraph 8 of the petition he alleges with great particularity the amount of cordwood he could have cut, also the amount of elm logs and ash logs suitable to be manufactured into lumber, the gross price he would have received from each of said items and the cost of cutting, preparing for market, and placing upon the market of each of said items, in fine, a detailed statement from which it could be seen what his net profits would have been if he had been allowed to carry out his contract, and appellee had not breached it." See also Rules 45 and 47, Texas Rules of Civil Procedure. These points are overruled.

■ Appellant's 7th point is: "The Court erred in rendering judgment for the plaintiffs against the defendant for loss of profits, as the loss of profits under the circumstances alleged constitute special damages and unless it is shown by allegation and proof that remuneration for them was provided for in the contract, or was in contemplation of the parties to the contract at the time it was made, or that notice of their probable loss was given to the defendant and that he entered into the contract in contemplation of such possibility, they are not recoverable; and such essential elements were not established in this case." This point includes substantially the matters complained of in Point 6. The timber contract between appellant and J. D. Stone was executed and delivered on August 14, 1940, and was to run for a term of one year. This contract, insofar as it covered oak timber, was, on the date of its execution, assigned by Stone to appellees. The consideration of said timber contract was paid by appellees with their check made payable to appellant and signed "Anderson & Bledsoe Stave Company by C. O. Bledsoe." Shortly after the execution of this contract, appellees entered upon the land and removed therefrom between 50 and 55 cords of stave timber which they shipped to their plant at Texarkana, Texas, and manufactured same into barrel staves. It is undisputed that on April 7, 1941, appellant sold to E. S. Stout all merchantable timber on the same land covered by the timber contract given by him to Stone, of which appellees are assignees. Appellant testified with respect to said timber that "I understood it was heading timber and maybe some stave timber, but the main thing I thought was heading." Appellee Bledsoe testified that he told appellant that he was going to make staves out of the timber. Shortly after Stout purchased the timber on April 7, 1941, he moved his sawmill upon the land and began manufacturing the timber into lumber and forbade entry of appellees upon said land for the purpose of cutting and removing the stave timber remaining thereon. Appellees' evidence showed the amount of standing stave timber remaining upon the land at the time of the sale thereof by appellant to Stout in April, 1941, as well as the expense incident to cutting, removing and manufacturing same into barrel staves at its plant at Texarkana, Texas. Their evidence also showed the market price of the manufactured staves at their Texarkana plant. The value of the manufactured staves, less the cost of cutting, removing and manufacturing same, forms the basis of this suit. Appellant's evidence contradicts that of appellees in respect to the amount of stave timber standing upon the land on the date of the execution of the timber contract between appellant and Stout. Appellant also introduced evidence to the effect that the bottom lands where the stave timber was located, during most of the time after

318

the execution of the Stout contract to the date of the expiration of appellees' contract on August 14, 1941, was wet and in such condition as to prevent appellees from removing the timber therefrom.

There is no dispute but that appellant breached his timber contract with appellees by the sale of all the timber on his land to Stout. This breach occurred some four months before the expiration of appellant's timber contract with appellees. This act of appellant was a direct violation of that section of his timber contract with Stone, assigned to appellees, wherein he agreed and covenanted to "keep the title thereto (timber) in such condition as to keep the said J. D. Stone, and his assigns from being in any manner interfered with, until he or his assigns shall have *reaped the full benefit of this contract* in accordance with the terms and conditions, as hereinbefore set forth" (italics ours). Thus it appears from both the pleadings and the evidence taken in connection with the timber contract itself that it was contemplated by the parties thereto that appellees were purchasing said timber for the purpose of manufacturing same into "heading and barrel staves." In Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097, 1099, by our Supreme Court, it is said:

"It is impossible to announce with exact certainty any rule measuring the profits the loss for which recovery may be had. The courts draw a distinction between uncertainty merely as to the amount and uncertainty as to the fact of legal damages. Cases may be cited which hold that uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery. A party who breaks his contract cannot escape liability because it is impossible to state or prove a perfect measure of damages. (Citing cases).

"Where, as here, it is shown that the business was a going concern, and was making a profit, when the contract was breached, such pre-existing profit, together with other facts and circumstances, may be considered in arriving at a just estimate of the amount of profit which would have been made if plaintiff had not breached its contract."

See also Id., Tex.Civ.App., 97 S.W.2d 306, by this court; 25 C.J.S., Damages, p. 522, § 43; Carrico v. Stevenson, supra.

In this case appellees' testimony shows the amount of profit they had made on the staves manufactured from the timber cut from appellant's land in the fall of 1940. And based upon this fact they established with reasonable certainty the amount of profit they would have made on the oak timber remaining on appellant's land on the date of the breach of the timber contract by appellant. The amount of oak timber, suitable for barrel staves, standing upon appellant's land on the date of the breach of said contract was a disputed issue of fact. This issue, however, was before the able trial judge who was in this case the trier of the facts. His judgment, in our opinion, is a reasonable one and finds ample support in both pleadings and evidence. Points 6 and 7 are overruled.

The judgment of the trial court is in all things affirmed.